## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| PRISCILLA CANTU, LASONIA FRAZIER, TRICIA WINROW, GERALDINE CARTER, LATORYA STEVENSON, AND MARY LIRA<br><br>          Plaintiffs,<br>     v.<br><br>CREDIT ONE FINANCIAL<br><br>          Defendant. | Case No. 3:16-cv-2459<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

PRISCILLA CANTU, LASONIA FRAZIER, TRICIA WINROW, GERALDINE CARTER, LATORYA STEVENSON, and MARY LIRA ("Plaintiffs") bring this action against Defendant CREDIT ONE FINANCIAL ("Defendant") to stop Defendant's practice of making illegal debt collection calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct.  Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### INTRODUCTION

1.      "The right to be let alone is indeed the beginning of all freedom."[1]  Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA"), Chapter 302 of the Tex. Bus. & Com. Code - the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA"), and Texas Deceptive Trade Practices Act ("DTPA").

---

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

1

2.      Defendant is a debt collection company that engages in reckless and aggressive debt collection practices which outright ignore controlling federal and state law, and the rights of the called parties.

3.      Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA.  Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance.  Defendant also called Plaintiffs after they clearly stated they did not wish to be called again.  Several of Defendant's calls also violate the FDCPA, which is a statute Congress passed to prevent harassing, unconscionable, and unfair debt collection practices.

4.      Finally, Defendant's conduct violates the Texas TCPA and, in turn, the DTPA. Accordingly, Plaintiffs are entitled to recover actual damages, attorneys' fees, costs of court, expert fees, deposition costs, and treble damages for each and every such violation.

## PARTIES

5.      Plaintiff PRISCILLA CANTU is a natural person and citizen of Grand Prairie, Texas.

6.      Plaintiff LASONIA FRAZIER is a natural person and citizen of Copperas Cove, Texas.

7.      Plaintiff TRICIA WINROW is a natural person and citizen of Fort Worth, Texas.

8.      Plaintiff GERALDINE CARTER is a natural person and citizen of Crum Lynne, Pennsylvania.

9.      Plaintiff LATORYA STEVENSON is a natural person and citizen of Dallas, Texas.

10.     Plaintiff MARY LIRA is a natural person and citizen of Dallas, Texas.

11.     Defendant CREDIT ONE FINANCIAL is a corporation under the laws of the State of Nevada.  Defendant maintains its principal office at Las Vegas, Nevada and may be served with

process by serving its Registered Agent, National Registered Agents, Inc. of NV, 701 S Carson Street, Ste 200, Carson City, Nevada 89701.

12.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

13.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331; this is a TCPA action.

14.     The Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic contacts with this District through their telemarketing scheme and is essentially at home here. Defendant conducts significant, ongoing business in this District and purposefully availed itself to this District. The Court has specific personal jurisdiction over Defendant because it targets this District with its wrongful, accused acts, and/or emanated those acts from this District. The exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b); a substantial part of the wrongful conduct giving rise to this lawsuit occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

16.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

17.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

18.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

19.     Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-

Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

20. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

21. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The FDCPA**

22. In 1978, Congress enacted the FDCPA in response to data showing that abusive collection practices lead to an increase in personal bankruptcy filings, marital instability, loss of employment, and invasion of personal privacy. The FDCPA prohibits false, deceptive, misleading, harassing, abusive and offensive conduct during collection of consumer debts. *See* 15 U.S.C. § 1692a, *et seq.* In particular, the FDCPA prohibits, *inter alia*, the following practices:

- Discussing debt with a third party. 15 U.S.C. § 1692b(2)

- Contacting a third party more than one time for the purpose of obtaining debtor's location information. 15 U.S.C. § 1692d(1)

- Calling debtor's workplace if debtor notified debt collector that such calls are unwanted. 15 U.S.C. § 1692c(a)(3)

- Calling debtor before the hours of 8 a.m. or 9 p.m. 15 U.S.C. § 1692c(a)(1)

- The collector from threatening violence or the use of criminal activity towards the consumer or property.  15 U.S.C. § 1692d(1)

- The collector from using obscene or profane language.  15 U.S.C. § 1692d(2)

- The collector from engaging in harassing, abusive and/or oppressive conduct.  15 U.S.C. § 1692d

- The collector from making false, deceptive, or misleading statements.  15 U.S.C. § 1692e, e(10)

- The collector from stating or implying that non-payment will result in arrest or criminal prosecution.  15 U.S.C. § 1692e(4)

- The collector from threatening suit, garnishment, or seizure of property without the legal ability to do the same.  15 U.S.C. § 1692e(5)

- The collector from failing to identify itself and the purpose of the call.  15 U.S.C. § 1692e(11)

23.     The FDCPA further expressly provides a private right of action to anyone who receives prohibited collection calls.  A prevailing plaintiff under the FDCPA is entitled to recovery of actual damages (including mental anguish), a statutory penalty of $1,000, plus costs and attorneys' fees. 15 U.S.C. § 1692k(a).

**The Texas TCPA & DTPA**

24.     Enacted in 1978, Chapter 302 of the TEX. BUS. & COM. CODE is the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA").  A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

7

(b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter.

Tex. Bus. & Com. Code § 302.303; *see also* Tex. Bus. & Com. Code § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).  The Texas TCPA shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business. Tex. Bus. & Com. Code § 302.003.

25.     The Texas TCPA also provides much harsher civil penalties than the federal TCPA:

(a) A person who violates this chapter is subject to a civil penalty of not more than **$5,000 for each violation.**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

(d) The party bringing the action also is entitled to recover **all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.**

Tex. Bus. & Com. Code § 302.302 (emphasis added).   The plaintiff can recover additional damages of **up to three times the amount of economic and mental anguish damages** for a DTPA claim. Tex. Bus. & Com. Code § 17.50(b)(1) (emphasis added).  Economic damages can be trebled if the defendant knowingly or intentionally violated the DTPA. *Id.*; *Bossier Chrysler-Dodge II, Inc. v. Riley*, 221 S.W.3d 749, 759 (Tex. App.–Waco 2007, pet denied).  Mental-anguish damages can be trebled if the defendant acted intentionally. Tex. Bus. & Com. Code § 17.50(b)(1).

## FACTS APPLICABLE TO ALL PLAINTIFFS

26.     Defendant's debt collection campaign is a continuous course of conduct and a pattern of practice, conducted under a common policy or program. From at least 2015 and through 2016, Defendant engaged in an aggressive debt collection campaign ("Campaign") that targeted people across the nation. Plaintiffs were directly targeted by Defendant's Campaign.

27.     Although Plaintiffs may live in different states, they share similar factual bases for Defendant's liability – marketing/debt collection pitch; lack of consent; use of an auto-dialer; targeting a cell phone; and loss of privacy, among others, all of which arise out of Defendant's Campaign.

**FACTS SPECIFIC TO PLAINTIFF PRISCILLA CANTU**

28.     Beginning around May 2015, Cantu began to receive calls from the number 972-969-0198, a number associated with Defendant.  Since that time, Cantu has received at least 80 calls from Defendant.

29.     Cantu received all calls described above on her cellular telephone assigned a number ending in 5182.

30.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Cantu's prior express written consent.

31.     When Cantu answered the calls, she heard short beeps, an automated message, and then was connected with a live representative.

32.     Cantu repeatedly told Defendant to stop calling.  Yet, Defendant continued to call.

33.     The purpose of the calls was to collect on a debt allegedly owed by Cantu to Defendant.

34.     To the extent Cantu ever provided consent to be called by an ATDS, she revoked any such consent.

35.     Cantu felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Cantu's multiple requests and continued to call her.

36.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Cantu believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

37.     On information and belief, Defendant's ATDS called Cantu on every occasion.

38.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

39.     Cantu is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 5182.

40.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

41.     Cantu did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

42.     Cantu is a consumer from whom Defendant is attempting to collect.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

43.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

44.     All calls Defendant made to Cantu violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

**FACTS SPECIFIC TO PLAINTIFF LASONIA FRAZIER**

45.     Beginning around June 2014, Frazier began to receive calls from the numbers 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, 602-282-1664, 310-359-6415, 585-283-6312, 863-784-3159, 469-249-6804, and 855-344-7841, all of which are associated with Defendant.  At the time Frazier filed this lawsuit, she

had received at least 133 debt collection calls from Defendant, sometimes multiple calls in a single day.

46.     Frazier received all calls described above on her cellular telephone assigned a number ending in 6631.

47.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Frazier's prior express written consent.

48.     Frazier answered at least one of these calls and interacted with the caller's live representative after being transferred by the dialing system.

49.     When Frazier answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

50.     Frazier told Defendant to stop calling.  Still, Defendant continued to call.

51.     Frazier felt the calls were an invasion of privacy and wanted Defendant to stop calling.  Defendant ignored Frazier's request and continued to call her.

52.     The purpose of the calls was to collect on a personal debt allegedly owed by Frazier to Defendant.

53.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, repeated calls after protest), Frazier believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

54.     On information and belief, Defendant's ATDS called Frazier on every occasion.

55.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

56.     Frazier is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6631.

57.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

58.     Frazier did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

59.     Frazier is a consumer from whom Defendant is attempting to collect.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

60.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

61.     All calls Defendant made to Frazier violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

**FACTS SPECIFIC TO PLAINTIFF TRICIA WINROW**

62.     Beginning around January 2016, Winrow began to receive calls from the numbers 610-297-8670, 704-496-5353, 614-948-4953, and 843-619-4190, all of which are associated with Defendant.  Since that time, Winrow has received at least 31 calls from Defendant.

63.     Winrow received all calls described above on her cellular telephone assigned a number ending in 6726.

64.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Winrow's prior express written consent.

65.     When Winrow answered the calls, there was a brief silence before the call connected to a live representative.

66.     The purpose of the calls was to collect on an allegedly past due credit card debt owed by Winrow to Plaintiff.

67.     Winrow informed Defendant's live representative on at least one occasion to stop calling her.  However, Defendant persisted in calling Winrow.

68.     Winrow even initiated a call to Defendant in order to inform Defendant to stop calling her.

69.     To the extent Winrow ever provided consent to be called using an ATDS, she revoked any such consent.

70.     Winrow felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Winrow's multiple requests and continued to call her.

71.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Winrow believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

72.     On information and belief, Defendant's ATDS called Winrow on every occasion.

73.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

74.     Winrow is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6726.

75.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

76.     Winrow did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

77.     Winrow is a consumer from whom Defendant is attempting to collect. Accordingly, the debt allegedly owed to Defendant is a consumer debt.

78.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

79.     All calls Defendant made to Winrow violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FACTS SPECIFIC TO PLAINTIFF GERALDINE CARTER

80.     Beginning around July 2015, Carter began to receive calls from the numbers 214-814-2001 and 253-244-6151, numbers associated with Defendant.  Since that time, Carter has received at least 13 calls from Defendant, sometimes multiple calls in a single day.

81.     Carter received all calls described above on her cellular telephone assigned a number ending in 9792.

82.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

83.     When Carter answered the calls, there was a pause and then a recording asking Carter to hold.

84.     The purpose of the calls is to collect an allegedly past due debt owed by Carter to Defendant.

85.     When Defendant calls, Carter is met with a recording instead of a live representative.  Carter wished to inform a human being that she desired to resolve the debt but was unable to get through Defendant's system to a live representative.

86.     Finally, Carter initiated a call to Defendant to inform Defendant to stop calling, and to set up a payment plan.  Rather than working with Carter, Defendant chose to continue its bullying and harassing collection practices and continued to call.

87. To the extent Carter ever gave her consent to be called by an ATDS, she revoked any such consent.

88. Carter felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Carter's requests and continued to call her.

89. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Carter believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

90. On information and belief, Defendant's ATDS called Carter on every occasion.

91. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

92. Carter is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 9792.

93. Carter is a consumer from whom Defendant is attempting to collect. Accordingly, the debt allegedly owed to Defendant is a consumer debt.

94. On information and belief, Defendant dedicates a substantial portion of its business to debt collection. Defendant regularly engages in the practice of collecting debts.

95. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

96. All calls Defendant made to Carter violate 47 U.S.C. § 227 and 15 U.S.C. § 1692.

**FACTS SPECIFIC TO PLAINTIFF LATORYA STEVENSON**

97. Beginning around July 2015, Stevenson began to receive calls from the numbers 407-358-6498, 201-373-8358, 407-358-6498, 602-282-1664, 732-867-2901, 866-910-8032, and 973-387-7936, all of which are associated with Defendant. At the time Stevenson filed this

lawsuit, she had received at least 16 debt collection calls from Defendant, sometimes multiple calls in a single day.

98.    Stevenson received all calls described above on her cellular telephone assigned a number ending in 0602.

99.    Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

100.   When Stevenson answered the calls, there was a momentary pause, then a recording, and then a live representative came on the line asking for 'Deborah."

101.   The purpose of the calls is to contact someone named "Deborah" regarding a loan.

102.   Stevenson informed Defendant that she is not "Deborah" and to stop calling. Nevertheless, Defendant persisted in calling Stevenson, who is not the person Defendant was attempting to reach.

103.   To the extent Stevenson ever gave her consent to be called by an ATDS, she revoked any such consent.

104.   Stevenson felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Stevenson's requests and continued to call her.

105.   Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Stevenson believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

106.   On information and belief, Defendant's ATDS called Stevenson on every occasion.

107.   The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

108.    Stevenson is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0602.

109.    Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

110.    All calls Defendant made to Stevenson violate 47 U.S.C. § 227.

## FACTS SPECIFIC TO PLAINTIFF MARY LIRA

111.    Beginning around May 2015, Lira began to receive calls from the numbers 732-867-2870, 580-559-8968, and 704-496-5350, numbers associated with Defendant.  Since that time, Lira has received at least 60 calls from Defendant, sometimes multiple calls in a single day.

112.    Lira received all calls described above on her cellular telephone assigned a number ending in 1230.

113.    Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

114.    When Lira answered the calls, there was dead air before Lira was connected with a live representative.

115.    Lira believes that the purpose of the calls is telemarketing and/or debt collection. Lira informed Defendant to stop calling her cell phone.

116.    Despite Lira's protests, Defendant continued to call.

117.    To the extent Lira ever gave her consent to be called by an ATDS, she revoked any such consent.

118.    Lira felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Lira's requests and continued to call her.

119.    Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Lira believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

120.    On information and belief, Defendant's ATDS called Lira on every occasion.

121.    The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

122.    Lira is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1230.

123.    Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

124.    All calls Defendant made to Lira violate 47 U.S.C. § 227.

**FIRST CAUSE OF ACTION**
**ALL PLAINTIFFS**
(**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,**
**47 U.S.C. § 227,** *ET SEQ.*)

125.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

126.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

127.    As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

128.    Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

18

## SECOND CAUSE OF ACTION
## ALL PLAINTIFFS
### (KNOWING AND/OR WILLFUL VIOLATION OF
### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

129.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

130.    The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

131.    As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

132.    Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION
## PLAINTIFFS CANTU, FRAZIER, WINROW, AND CARTER
### (VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.*)

133.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

134.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited provisions of 15 U.S.C. § 1692d(2), 15 U.S.C. § 1692d, and 15 U.S.C. § 1692e(5).

135.    As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to an award of $1,000.00 in statutory damages, for each and every violation, and actual damages, including mental anguish.

**FOURTH CAUSE OF ACTION**
**PLAINTIFFS CANTU, FRAZIER, WINROW, STEVENSON, AND LIRA**
**(VIOLATION OF THE TEXAS REGULATION OF TELEPHONE SOLICITATIONS**
**Chapter 302 of the TEX. BUS. & COM. CODE)**

136.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

137.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, including but not limited to each and every one of the provisions of Chapter 302 of the TEX. BUS. & COM. CODE.

138.    As a result of Defendant's violations of the Texas TCPA, Plaintiffs are entitled to an award of statutory damages in the amount of $5,000, for each and every violation, and actual damages including mental anguish, all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

**FIFTH CAUSE OF ACTION**
**PLAINTIFFS CANTU, FRAZIER, WINROW, STEVENSON, AND LIRA**
**(VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**Chapter 17 of the TEX. BUS. & COM. CODE)**

139.    Plaintiffs hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

140.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, which automatically results in a violation of the DTPA.

141.    A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

"(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

(b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter."

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).

142.    As a result of Defendant's violations of the DTPA, Plaintiffs are entitled to an award of actual damages, treble damages for the Texas TCPA violations ($15,000 per violation), costs of court, and attorney's fees.

## ATTORNEY'S FEES

143.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

144.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

145.    Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- An award of $1,000.00 in statutory damages, for each and every violation, pursuant to 15 U.S.C. § 1692, *et seq.*;

- An award of $5,000.00 in statutory damages, for each and every violation, pursuant to Chapter 302 of the Texas Business & Commerce Code, *et seq.*;

- Actual damages, including mental anguish.

- An award of $15,000.00 in statutory damages, for each and every violation, pursuant to Chapter 17 of the Texas Business & Commerce Code, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.

- Attorneys' fees, costs and any and all other relief deemed just and proper.

Dated:  August 24, 2016                    Respectfully Submitted,

                                           */s/ Jarrett L. Ellzey*_____
                                           W. Craft Hughes
                                           Jarrett L. Ellzey
                                           **HUGHES ELLZEY, LLP**
                                           2700 Post Oak Blvd., Ste. 1120
                                           Galleria Tower I
                                           Houston, TX 77056
                                           Phone: (713) 554-2377
                                           Fax: (888) 995-3335
                                           E-Mail: craft@hughesellzey.com
                                                   jarrett@hughesellzey.com

                                           Bryant A. Fitts
                                           bfitts@fittslawfirm.com
                                           **FITTS LAW FIRM, PLLC**
                                           2700 Post Oak Blvd., Suite 1120
                                           Houston, Texas 77056
                                           Phone (713) 871-1670
                                           Fax (713) 583-1492

                                           Mark A. Alexander (TBN 01007500)
                                           **MARK A. ALEXANDER, P.C.**
                                           5080 Spectrum Drive, Ste. 850
                                           Addison, Texas 75001
                                           Phone (972) 364-9700
                                           Facsimile (972) 239-2244

                                           **ATTORNEYS FOR PLAINTIFFS**